Supreme Court has found that there is a retaliation claim under the ADEA. I think that significantly alters the landscape because of the elements of a retaliation case being somewhat easier, if you will, more simple to analyze as opposed to the straight discrimination claim. The straight discrimination claim begins with the April 2005 hiring process. We get into the quagmire of that and the retaliation claim allows us to spring out of that. So what's the act of retaliation? The acts of retaliation, first of all, the test is whether or not it is reasonably likely to deter protective activity. Applying that test, we look first to the offer of the temporary supervisor position in July that he took, and we claim that that was a ruse to get him not to go formal, which we claim is an adverse action, and not to apply for the two other positions that became open once he had accepted that temporary leadership position, the two permanent positions that became open. Now, I realize that the failure to apply for those positions probably puts us out unless we can show it would be a futile gesture, and we've to continue to answer your question, Your Honor. We contend that the denial of an opportunity to promote meets the reasonably likely to deter test. And so while it may not fit in terms of an adverse action with respect to the straight discrimination claim because he didn't apply for those positions, we contend it would fit with respect to the Colesalter and Wray test. So the claim of retaliation is that he filed his charge, he made his complaint about discrimination, correct? Correct. And then the act of retaliation was in offering him a temporary position, knowing that they were going to have a permanent position available? Exactly. And telling him that his temporary position would become permanent when the night shift became permanent, and the day after he takes the actually fills the position, they cancel night shift. So now it's too late to apply for those other two positions. It's too late to go formal with his complaint. So those two things have occurred successfully under the ruse that I've stated. Well, now, what about the deposition where he concedes the Army did not prevent him from applying? He concedes that, Your Honor, because it's true. In a technical sense, it's true. But the theory of the case is, and the circumstantial evidence is, that Foxworthy knew he'd made a complaint. He knew that it was about to go formal. And these things happened. And that a reasonable inference exists from the circumstance after he took the position that Foxworthy was trying to get him to take the temporary position and then telling him it was permanent so that he wouldn't apply for the others and so that he would drop his formal complaint and then pull the rug out from under him. And it was too late to go back and do either one. And then in October, before, because this temporary position was temporary, could be revoked at any time, as he signed that form that's in the record. But it was to be effective until June of the next year, 2006. In October, they moved him out of that position to a W-5 position. So now he's a worker again. And then they move him out of box and crate, where he was, to shipping and delivery. Now, the problem is you're claiming that all this was done to him because of his age. Is that underlying all of it? I think that's alleged, Your Honor. But, again, we have the retaliation theory to carry us through this time frame. Yeah, but this is an ADEA case. It is an ADEA case. And you're claiming all of these things were done to him, among other things, you might say for retaliation, but also because of his age. Where is there any evidence at all that there was animosity towards your client because of age? It begins at... And you've got this competitive examination. He ended up third. I mean, he was behind everybody else. He got third. And the problem is, as far as I see it, is the union representatives said that he didn't do very well. They were surprised he didn't do better, but he didn't do well. So the union reps come down, and they say not only was this a fair investigation, that everybody was treated equally, but they, in my words, could understand why your client didn't do well, because he didn't do well. He read the stuff instead of talking about his background and experience. So I'm having trouble finding anything in here suggesting your client was the victim of age discrimination. Where is it? If you read the woman who was on the panel, her statement, she's second in order in the exhibits, Your Honor. She states that she explains how he was basically tied with the other person for number two. And if you look at that evidence, you'll see that he was tied for number two in terms of the rankings. But they had to put him to three for some reason. I can't remember the exact reason. Where's age? Where's age? The person who was selected, Haggerty, was substantially younger than he was. Great. But where does it show? I can't find anything that says that they had his age in mind, and that was the whole purpose of this thing. It was a competitive exam. The union seems to say the competitive exam was fair. They understand why he didn't do well, because in their view, he didn't do well. So it seems to me that he just lost as a matter of competition. The other two beat him out. The question, I think – I mean, is this a case where anybody says, hey, we're going to get rid of the old guys, or this guy's an old whatever it is? You know, you usually have something like that. You don't even have any stray comments in this case. It seems like you're trying to tease out of a set of circumstances that's more consistent with just failing on the competitive process. I'm going to answer your question, but there's also a retaliation claim, and the question – I know. I know. You keep wanting to go to retaliation. I want to start with age. I know you do, Your Honor. I just want to point out – And probably there is none, because that's why you want to go to retaliation. No, it isn't. It isn't. Well, then what's the age problem? Okay. I'll talk about the age first, then. He is qualified for that position by virtue of the fact that he was put into a temporary supervisor position in January of 2005, and he'd worked there. He had trained the person who took one of the supervisor positions in July. He trained that person on how to be a supervisor in March and April of 2005. Haggerty, a substantially younger person, was selected in April for the position in lieu of him. He tied for second in the interview process, according to the woman. The man, Garrett, I think his name is, in the record, who was on the panel, said that he should have qualified as number one based upon his experience. The problem, I acknowledge, Your Honor, is that he brought a notebook with him, and he read the answers, and he didn't use the buzzwords that they were looking for, although he was very prepared. They all note that his qualifications were – And the question is, in terms of the fourth element, what this substantially younger person, as qualified or less qualified, that's the issue. See, and you want to tease out all this. It must have been age. The only thing that could explain this is age. You know, Sandra Day O'Connor came to our court years ago, and she said, look at these cases in summary judgment this way. If you got to a jury verdict, would there be enough to support it? And if not, get rid of it on summary judgment. And on the age thing, I don't see anything at all that would support a verdict. Retaliation, though, is the same problem, though. What's the evidence that it was retaliation other than just the way things seem to have unfolded? Well, temporal proximity, the failure – first of all, let's start with the question of whether his filing of the informal was protected activity. Even assuming that his denial of the promotion in April of 2005 was – doesn't meet the fourth element of the ADEA straight claim, the question is whether he reasonably perceived under the Breeden v. Clark County case, United States Supreme Court, whether he reasonably perceived that he was discriminated against. If so, then that informal complaint is protected. And moreover, that's just under the opposition clause. The informal process is part of that EEOC process. Under the participation concept, he is protected even if he's mistaken as to his belief that he'd been discriminated against. So we have that. And then we move forward in time to the circumstantial evidence that unfolds that is askew from what one would expect in the normal course of events, that people would keep their promises, that Foxworthy would say to him, you're going to have a permanent position. Take this one. Meanwhile, he sees 30 days go by for the formal, and then he puts these other two positions up, and he can't go for those two positions because he doesn't need to. He doesn't want to because he might be denied because he thought he was discriminated against before. Now he's got this position. It's not an 8, but it's a 7. And he wants to stay in that position because it's going to become permanent as soon as the night shift becomes permanent. But the day after he takes that position, the night shift is eliminated. Thank you, counsel. Your time has expired. We'll hear from the government. Thank you, Your Honor. Your name? Please introduce yourself for the record, counsel. Yoshinori Himal, Assistant United States Attorney, representing the Secretary of the Army. One preliminary point, and this is about my fairness, I'm accused of sandbagging. We didn't sandbag below. We gave fair warning in the moving points and authorities, not the reply below, with all-inclusive language that's found at ER 294, where we say, where we talk about how the actions had a legitimate nondiscriminatory reason and the burdens on the plaintiff to show evidence of pretext. And, of course, in the motion exhibits those, the reasons for the April. I simply don't know what you're talking about. Why don't you go to the issues? Certainly. I was concerned that somebody might be concerned about that. Now, Judge Pius, Judge Trott, you both asked about the acts in question. Are you talking retaliation? Yes. All right. Very well. All right. The acts included surrender of the keys, but there's a legitimate nondiscriminatory reason for that. Everybody has to surrender their keys when they get reassigned out of the box and crate shop. That's standard protocol. Is that what you're saying? Standard, yes. The October 1 transfer out of box and crate to a reverse pipeline shop. Well, the declaration of the decider, Mr. Foxworthy, at page 169 of the ER, explains that, that it was completely neutral based on the permanent rank of the individual. Now, what about Mr. Dickerson's main point, and that is with respect to retaliation, that there's the offer of the temporary position, which he feels is sufficient to allege retaliation? Well, that temporary, everybody on the night shift was subject to being, subject just like Mr. Lindblom, to being taken off the night shift when it was abolished. And his, he says that he was discriminated against in that respect. No. He was treated like every other member of the night shift. Yeah, but help us with record references, okay? Yes. I don't understand your overall intuition here, but what, with respect to the papers, what meets Mr. Dickerson's challenge? For example, in the Foxworthy declaration, it says that on page 169, paragraph 10, it was his decision when to abolish the night shift. And, in fact, he did, and there was nothing that he could do. That affected other people, not just this one? Yes. And as far as telling the contentions made, that he failed to tell the plaintiff in time so that he could either make his formal charge of discrimination or apply for other jobs. By the way, the other jobs in July were wage grade eight. Wage grade is lower generally than work leader, which was the position he had starting in late July. Are you being responsive to Mr. Dickerson's point? He says, as I recall, that there was the offer of the temporary position, which he feels was, in effect, pretext. It was a subterfuge, and he had no intention of offering the permanent position and, in effect, dissuaded him from applying for the permanent position. That's what I want to hear from you. First, he did not know that it would be exceedingly temporary until July 21st when he made the decision to abolish the night shift. All of this, all of Mr. Lindblom's decisions occurred before that. June 28th was his deadline for going formal in the EEO process, not July. So he had already made that decision. He couldn't be influenced by Mr. Foxworthy's actions. And then, as far as his decision not to apply for the higher wage grade position, he made that decision on or before July 19th, which was the day that the applications closed, two weeks after July 5th, the day that he found that he was promoted temporarily to work leader. And the so July 21st, when Mr. Foxworthy knew anything and could communicate anything, was after Mr. Lindblom made his decision, supposedly in reliance not to not apply for the position. What's the best evidence that the plaintiff was not dissuaded from applying from the permanent position? Or the best showing? There are two. And those two are first in his complaint, ER 306, paragraph 10, judicial admission. Quote, Plaintiff would have applied for and obtained said position, ellipsis, plaintiff was told this by the branch chief. Well, told that, I'm sorry if I'm not making sense there. What is the evidence that he was not persuaded by Mr. Foxworthy to fail to apply? That is both the timing and the fact that Mr. Foxworthy uncontrovertedly did not tell anyone not to apply for a higher position. On the contrary, at ER 169, paragraph 10, he talks about how he counsels everyone to apply whenever there's an opportunity to increase their permanent grade. And this was that situation. And Mr. Lindblom in his deposition and other evidence has no evidence that it was Mr. Foxworthy that told him that, and Foxworthy on 169 is the only person with authority to tell that. Very well. Anything further, counsel? Nothing. Nothing further. Thank you. Very well. The case just argued will be submitted for decision.
judges: O'scannlain, Trott, Paez